PHILLIPS PETROLEUM COMPANY, Petitioner, *v.* THE POLLUTION CONTROL BOARD *et al.*, Respondents.

Second District   No. 78-339

Opinion filed May 24, 1979.

Robert D. Owen and Linda M. Castleman, both of Owen, Roberts, Susler, & Murphy, of Decatur, for petitioner.

William J. Scott, Attorney General, of Chicago (David G. Lichtenstein, Assistant Attorney General, of counsel), for respondents.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

This is a direct appeal under Supreme Court Rule 335 (Ill. Rev. Stat. 1977, ch. 110A, par. 335) for a review of an administrative decision of the Illinois Pollution Control Board (hereafter PCB). The Illinois Environmental Protection Agency filed a complaint against both Phillips Petroleum Company and the Chicago and Northwestern Transportation Company, and the order appealed from found that petitioner, Phillips Petroleum Company, and the Chicago and Northwestern Transportation Company violated section 9(a) of the Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1009(a)) on May 16, 1976. Only Phillips has brought this appeal, and we accordingly consider only the issues as they pertain to Phillips.

On May 16, 1976, a train derailment occurred in Glen Ellyn, Illinois. As a result, a tank car was punctured and anhydrous ammonia was released into the air. The immediate area was evacuated, some property damage resulted, and some people suffered physical reactions to the

exposure to the gas. The accident occurred about 4:30 a.m. and the leak continued for some 16 hours until it was plugged at about 8:30 p.m. The tank car in question is owned by Phillips and was loaded with anhydrous ammonia by Phillips, who was shipping it to a consignee in Wisconsin. For this purpose, the Northwestern "put together" the train in Madison, Illinois, near East St. Louis, and maintained control over the car until the derailment.

■■ A threshold question is whether the PCB had jurisdiction to hear the case. Phillips contends that this is a case about railroad operations and safety, with only incidental relation to air pollution; the PCB's position is that this is primarily an air pollution case, only tangentially related to railroad operations and safety. Regulation of railroad operations and safety is preempted by Federal law (49 U.S.C. §1811(a), (b) (1976)), and while States may adopt rules which provide some regulation of railroad safety to guard against local hazards, such rules must not impose an undue burden on interstate commerce. 45 U.S.C. §434 (1976).

■ We note first that the purpose of Federal preemption of railroad safety is to prevent the existence of conflicting State and local safety standards; however, preemption does not extend into well established common law areas of redress such as products liability. (*Rucker v. Norfolk & Western Ry. Co.* (1978), 64 Ill. App. 3d 770, 381 N.E.2d 715.) As indicated above, States maintain a limited right to regulate as to local hazards even when there exists Federal preemption. An example of such a situation is *Huron Portland Cement Co. v. Detroit* (1960), 362 U.S. 440, 4 L. Ed. 2d 852, 80 S. Ct. 813. In that case a shipowner had two vessels which were licensed by the Federal Government for operation on the Great Lakes. The boilers of the vessels were inspected periodically by the Coast Guard and were approved for operation. The normal operation of the boilers required that the fires be cleaned periodically, a process which caused smoke to be emitted into the air. This was done while docked at the Port of Detroit, and the smoke which was emitted exceeded the maximum standards allowable under a local ordinance.

A prosecution of the ordinance violation was begun, and the shipowner brought an action to enjoin the litigation and the enforcement of the ordinance except as to improper use of the boilers. The Michigan courts refused to issue the injunction, and the matter was brought to the United States Supreme Court. The shipowner's argument there was that the local ordinance conflicted with Federal regulation and was therefore preempted, and that even if not preempted, the local ordinance constituted a material impediment to interstate commerce.

The Supreme Court noted that the purpose of the ordinance was to promote the health and welfare of local residents; that such legislation clearly fell within the police power; and that legislation may affect

interstate commerce without regulating it. The court concluded that the ordinance merely created an orderly and reasonable scheme of community regulation and it did not burden the Federal license so much as to render the ordinance unconstitutional.

■■ Phillips' contentions before us are similar to those raised by the shipowner in *Huron Portland*. In light of that case and because of its similarity to the cause before us, we conclude that the PCB had jurisdiction to hear the case, in that it dealt with a matter of local regulation regarding the pollution of the air.

■ The next issue we must resolve is the PCB's contention that Phillips limited itself below to the jurisdictional question of preemption and therefore should not be allowed to address itself to substantive issues. The record shows that Phillips' brief before the PCB also argued the issue of whether Phillips performed any act causing pollution which was within the purview of the Environmental Protection Act; it is our view that this is sufficient to raise an issue as to the sufficiency of the evidence against Phillips.

Phillips contends that there was no evidence that it did any act to cause, threaten, or allow the pollution, as required by section 9(a), and that therefore the decision of the PCB is against the manifest weight of the evidence. The findings of an administrative agency on questions of fact are prima facie correct and will not be disturbed on review unless they are against the manifest weight of the evidence. (*Wood v. Illinois Liquor Control Com.* (1977), 55 Ill. App. 3d 228, 371 N.E.2d 138.) For a judgment to be against the manifest weight of the evidence, it must appear that conclusions opposite to those reached by the trier of fact are clearly evident. *Wood v. Illinois Liquor Control Com.*

■■■ We note that the PCB's opinion stated in part, "Since Respondent Phillips addressed only the issue of preemption, the Board can find no reason why it should not also be responsible for the emissions from its own tank car and finds that Phillips has violated Section 9(a) of the Act." While it is true that the Environmental Protection Act is *malum prohibitum* (*Meadowlark Farms, Inc. v. Pollution Control Board* (1974), 17 Ill. App. 3d 851, 308 N.E.2d 826), this factor addresses only the lack of necessity of proving knowledge or intent. We have found no case which imposes strict liability on an alleged polluter. Among other factors in *Meadowlark*, the evidence showed that the alleged polluter had capability of controlling the pollution; even in *Bath, Inc. v. Pollution Control Board* (1973), 10 Ill. App. 3d 507, 294 N.E.2d 778, the alleged polluter was at least in control of the premises on which the pollution occurred, although he denied knowledge of it. The record in the present cause does not show any admissible evidence which indicates that Phillips exercised sufficient control over the source of the pollution in such a way as to have caused,

threatened, or allowed the pollution. Lacking evidence to support the order, the opposite conclusion is clearly evident and we hold that it was error to find Phillips in violation of section 9(a). Because of this holding, we need not reach the issue of whether the order is unconstitutionally vague.

The June 8, 1978, order of the Illinois Pollution Control Board is accordingly reversed as to Phillips Petroleum Company only.

Reversed in part.

GUILD, P. J., and NASH, J., concur.